Harold Lorne **CHEROT**, Appellant,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY**, a corporation, Central Surety & Insurance Corporation and Orville Lester Carter, Appellees.

No. 5972.

United States Court of Appeals
Tenth Circuit.

Feb. 26, 1959.

Rehearing Denied March 24, 1959.

---

Bryan Tabor, Tulsa, Okl. (Rucker, Tabor & Cox, Joseph A. Sharp, Joseph F. Glass, Tulsa, Okl., on the brief), for appellant.

Alfred B. Knight, Tulsa, Okl., for appellee, U. S. Fidelity & Guaranty Co.

Thomas R. Brett, Tulsa, Okl. (Robert D. Hudson, Tulsa, Okl., on the brief), for appellee, Central Surety Co.

Before HUXMAN, MURRAH and BREITENSTEIN, Circuit Judges.

HUXMAN, Circuit Judge.

This was a declaratory judgment action in which the two appellee insurance companies sought and obtained a declaratory judgment, declaring that they were not required to defend a damage action instituted by Harold Lorne Cherot against Orville Lester Carter arising out of an automobile accident under policies of insurance which they had issued. It was the companies' claim that there was no liability because of an exclusionary clause in each policy. USF&G Company had issued its policy to Howard F. Schultz on the Auburn automobile involved in the collision, and Central Surety Insurance Company had issued its policy to Orville Lester Carter. They were both conventional liability insurance policies. Schultz owned a 1932 Auburn automobile which he left with Carter for repair. While the car was

being driven by Carter, it was involved in an accident in which Cherot was injured.

The USF&G policy provided that it should not apply "to an owned automobile while used in the automobile business." The Central policy excluded coverage of "a non-owned automobile while used (1) in the automobile business by the insured." The Central policy also contained this provision. "Automobile business means the business of selling, repairing, servicing, storing or parking of automobiles."

Appellee insurance companies contended successfully in the trial court that the automobile was being used in the automobile business by Carter at the time of the accident, and that, therefore, there was no liability against either of them because of the above exclusionary clauses.

■ There was no oral testimony in the trial court. The case was submitted on statements at the pretrial conference and on the depositions of Howard Schultz and Orville Lester Carter. In the absence of oral testimony in the trial court, findings of fact by that court do not carry the same weight on appeal as they do when oral testimony is heard. In that posture of the case, an appellate court is equally capable with the trial court of examining evidence and drawing conclusions therefrom.[1] Nonetheless we are loath to overturn the findings of an experienced trial judge unless, in our opinion, they are clearly erroneous.

What constitutes doing business is a question of law. Whether one is engaged in business under the definition is a question of fact. The books are replete with definitions defining business or what constitutes doing business. In Kelley v. United States, 10 Cir., 202 F.2d 838, 841, we defined business as follows:

"'Business' is a comprehensive term. It has been defined as that which 'occupies the time, attention and labor of men for the purpose of a livelihood or profit.'"

In Gray v. Board of County Commissioners of Sedgwick County, 101 Kan. 195, 165 P. 867, 868, L.R.A.1918F, 182, the Kansas Court said that:

"'Business' has been held to be synonymous with 'calling,' 'occupation,' or 'trade,' and defined as 'any particular occupation or employment engaged in for a livelihood or gain.'"

Throughout these cases and numerous others runs the idea of effort occupying a substantial part of one's efforts or time carried on for the purpose of profit or gain.

■ Thus considered, we are of the view that the evidence fails to sustain the court's finding that the insured automobile was being used by Carter in the automobile business within the meaning of the exclusionary clauses of these two policies. Carter and Schultz were both employed as full-time employees for the Reda Pump Company. Carter was a mechanic and Schultz was sales manager. Prior to his employment by Reda Pump Company, Carter had worked as a garage mechanic. He enjoyed working on cars and did so as an "accommodation" to his friends and as a "hobby." At his home he had some manual and mechanical hand tools, a floor jack, and a two-car garage. At one time he had considered going into the car repair business and had forms printed with the heading "Red's Service Garage." During this period, he did some work for some commercial concerns and charged for both labor and material. Carter testified that some nine months before this transaction he quit his attempt to organize a repair business and quit charging for work because he wasn't making any money.

Schultz had purchased this antique Auburn and had asked Carter to help him restore it to running condition. The car was delivered to Carter in 1956, but was returned to Schultz. It was redelivered to Carter in May or June, 1957, and remained in his possession until the time of the accident on October 13, 1957. Carter and Schultz worked together on

1. Blackner v. McDermott, 10 Cir., 176 F.2d 498, and cases there cited.

the car outside their regular office hours. Carter estimated that he put in about thirty hours and Schultz about half that much time. Carter testified, and his testimony in this respect is uncontradicted, that he did not intend to charge Schultz for labor. Schultz testified that he intended to pay Carter for labor but admitted that mention had never been made of any charge other than for actual expenses. After Carter abandoned his idea of engaging in the automobile repair business for profit, he continued to use the forms headed "Red's Service Garage" to keep track of expenditures on various cars he was working on. Schultz advanced Carter $60 to be used for "actual out of pocket expenses," as testified to by Carter. About the time the automobile was completed, Carter gave Schultz a written statement on stationery headed "Red's Service Garage" showing in itemized form how the $60 had been spent. It showed that $49.68 had been expended for parts. The form contained a column for listing various charges, such as parts and labor. The statement given Schultz contained this notation.

> "Parts      $49.68
> Labor      ————(Left Blank)
> Total       ————(Left Blank)"

Carter testified that in addition to the charge for the parts there would be some slight charge for the use of electricity. He said they had used quite a bit of electricity and room in the garage. Carter testified that, "I couldn't have parked my car in there, we would probably have settled on a few dollars above,—for working on it."

Certainly, so far as the transaction is concerned, his testimony that there was no charge for labor stands uncontradicted. While there was testimony that he worked on a number of cars each month at his home, the testimony is that he did this as a hobby for his friends and made no charge for his labor and that most of these services were of a minor nature. It is significant that not a single instance is established where he charged for labor during the nine months preceding the accident. He also testified that he did not include in his income tax return any item for labor from his car operations.

 We are dealing here with an exclusionary clause. Such provisions are strictly construed. These policies were prepared by the insurance companies. In the absence of a clear showing therein to the contrary, it must be assumed that the word automobile "business" as used in the exclusionary clause means business in the ordinary accepted sense—that is an undertaking engaged in with some regularity and for profit and income.

Carter's testimony that he abandoned his attempt to establish an automobile repair business stands uncontroverted by any direct testimony, as does his testimony that tinkering with cars for his friends was a hobby with him for which he made no charge for labor.

Reversed.