**CONTINENTAL INSURANCE COMPANY, a corporation, Plaintiff,**

**Preferred Risk Mutual Insurance Company, a corporation, Plaintiff-Intervenor,**

**v.**

**Joe THOMPSON et al., Defendants.**

**Civ. No. 70–C–370.**

United States District Court, N. D. Oklahoma, Civil Division.

March 29, 1972.

Dan A. Rogers, Richard D. Gibbon, Tulsa, Okl., for plaintiff and plaintiff-intervenor.

Jefferson G. Greer, Tulsa, Okl., W. C. Bill Sellers, Sapulpa, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

This is a declaratory judgment action brought by Plaintiff Continental Insurance Company (Continental). Two insurance policies of Continental are involved. One is a Homeowner's Policy issued to Defendants Joe and Thelma Thompson. The other is a Family Automobile Policy issued by Continental to the Defendant Richard McGuire. Preferred Risk Mutual Insurance Company (Preferred) has intervened as an additional party Plaintiff. It seeks declaratory judgment as to one policy, a Family Automobile Policy, issued by it to the Defendant Richard McGuire. Thus, we have one Homeowner's Policy and two Family Automobile Policies involved.

The Court has conducted an evidentiary hearing, the matter has been fully briefed and argued and the Court now makes the following findings of fact, conclusions of law and decision in the case:

Defendants Joe and Thelma Thompson own a tract of land consisting of approximately three (3) acres near Depew, Oklahoma. This tract of land measures four hundred twenty-four (424) feet from East to West and three hundred ten (310) feet from North to South. There are three buildings on this tract of land. One is a dwelling house occupied by Joe and Thelma Thompson. This house is located on the west side of this tract of land. Joe and Thelma Thompson own and operate a service station located on the east side of this

tract of land. There is also a garage building located on the east side of this property.

On August 17, 1969, Defendant Richard McGuire, accompanied by his two young daughters, drove his pickup truck into the Thompson service station to have it filled with gasoline. Tony Thompson (Tony), an adult son of Joe and Thelma Thompson, was living temporarily at their home at this time. While at home he was helping to operate the service station. When McGuire drove up Tony came out of the service station with a cigarette in his mouth and a cigarette lighter in his hand. McGuire alighted from his pickup truck, ordered a tank of gas and stood beside the truck talking with Tony. Tony started filling the pickup with gasoline during which operation the gasoline overflowed, ignited and in jerking the nozzle from the gas tank Tony sprayed burning gasoline into the cab of the pickup truck which resulted in the death of one child and injuries to the other child. McGuire has brought suit for himself and also on behalf of his two children against the three Thompsons based on alleged negligence of Tony. These lawsuits pend in an Oklahoma State Court. The Plaintiff Continental and the Intervening Plaintiff Preferred contend that their insurance policies do not cover this unfortunate accident.

## CONTINENTAL'S HOMEOWNER'S POLICY

■ The Court finds and concludes that Continental's Homeowner's Policy [1] did not cover the accident involved herein as the same was not sustained on the insured premises. The policy described the dwelling as being of frame construction, stated that no business pursuits are conducted at the premises and described the premises as follows:

"The described premises covered hereunder are located at the above address unless otherwise stated herein: West side of tract, in SE corner of SE–NE of S1–T15–R7E."

The policy contained further provisions as follows:

"Premises. Means the premises described in the Declarations, including grounds, garages, stables and other out buildings incidental thereto, and private approaches thereto."

MIC–4 Endorsement further provided:

"This Company Agrees With The Named Insured: Insuring Agreements—1. Coverage E—Personal Liability—5. Supplementary Definitions: (c) premises. For purposes of Section II, the definition of 'premises' appearing in the Basic Policy shall include: (1) all premises where the Named Insured or his spouse maintain a residence and includes private approaches thereto and other premises and private approaches thereto for use in connection with the said residence, except business property and farms,"

"(d) 'business property' includes (1) property on which a business is conducted. . . ."

The Court finds from the evidence that the Thompson residence was located on the west side of the tract and the service station and garage building were located on the east side of the tract. The accident did not occur on the west side of the tract but occurred at the service station on the driveway serving the same next to a gasoline pump, all located on the east side of the tract. It did not occur on private approaches to the residence. The accident occurred on business property which was open to the public. Thus, as the accident did not occur on the residence premises described and covered by Continental's Homeown-

---

[1]. This policy provided personal liability insurance for bodily injury sustained by any person on the described premises. The policy provides: "Section II of the Policy Does Not Apply: (3) to any act or omission in connection with premises, other than as defined, which are owned, rented or controlled by an insured,".

er's Policy the policy did not apply to said accident.

Moreover, Continental's Homeowner's Policy provides that there is no coverage if a loss arises out of a business pursuit of an insured. This policy provision provides:

> "Section II of this Policy Does Not Apply:
>
> (a)(1) to any business pursuits of an Insured, except, under Coverages E and F, activities therein which are ordinarily incident to non-business pursuits, . . . ."

In Cherot v. United States Fidelity and Guaranty Company, 264 F.2d 767 (Tenth Cir. 1959) our Circuit said:

> "What constitutes doing business is a question of law. Whether one is engaged in business under the definition is a question of fact. The books are replete with definitions defining business or what constitutes doing business. In Kelley v. United States, 10 Cir., 202 F.2d 838, 841, we defined business as follows:
>
> > ' "Business" is a comprehensive term. It has been defined as that which "occupies the time, attention and labor of men for the purpose of a livelihood or profit." ' "

The Court finds that at the time of the accident Tony was engaged in a business pursuit for his parents as their agent servicing automobiles at their service station for a profit. The fact that he personally was not on a salary does not alter the fact that the service station was a business property on which business was conducted for profit and the accident occurred thereon and in connection therewith while Tony was engaged in a business pursuit. His activities were not incident to a non-business pursuit. Rather, his activities were pursuant to a business pursuit. Coverage is not afforded under these circumstances.

It is therefore concluded that as the accident did not occur on the premises described and covered by said policy and moreover as the accident occurred while Tony was engaged in a business pursuit the policy does not cover this accident.[2]

## THE TWO FAMILY AUTOMOBILE POLICIES

Both Family Automobile Policies were issued to Defendant Richard McGuire. For these policies to cover this accident it will be necessary that Tony Thompson be found to be an additional insured covered by said policies. As Tony was not the named insured or the owner of the pickup or a resident of the same household as Defendant Richard McGuire, the owner of the pickup, he would have to become a person insured under the omnibus clause portion of the policies which read as follows:

> "Part I—Liability Persons Insured
>
> The following are insureds under Part I:
>
> (a) with respect to the owned automobile, (1) the named insured and any resident of the same household, (2) *any other person using such automobile* with the permission of the named insured provided his actual operation or (if he is not operating) other actual use thereof is within the scope of such permission,". (Italics added.)

2. If, as alleged by Defendants, Tony was exercising control over the pickup of Defendant McGuire, coverage is still excluded for the policy also provides in MIC–4 Endorsement:
"Section II of this Policy Does Not Apply:
(b) under Coverage E and F, to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles or midget automobiles while away from the premises or the ways immediate adjoining. . . . "
"(e) 'automobile' means a land motor vehicle . . . "
The accident which involved an automobile occurred *away from the premises or the ways immediately adjoining* according to the evidence.

The policies also provide under an exclusion as follows:

"This policy does not apply under Part I:

(g) to an owned automobile while used by any person while such person is employed or *otherwise engaged in the automobile business,* but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent or employee of the named insured, such resident or partnership;" (Italics added.)

Automobile business is defined in the policy as follows:

" 'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles;" [3]

■ Thus, for Tony to be covered he must be using Defendant McGuire's owned automobile with his permission and if so using the same must not be using it while he is employed or otherwise engaged in the automobile business. Under the evidence of this case the Court finds and concludes that these Family Automobile Policies do not cover Tony as he was placing gasoline in the McGuire pickup.

■ First, Tony was not using Defendant McGuire's owned automobile within the meaning of such policies.

The case of Yandle v. Hardware Mutual Insurance Company, 314 F.2d 435 (Ninth Cir. 1963) provides:

"As generally understood, the word 'use' means to make use of or to enjoy. See Wahler v. Thompson, 36 Misc.2d 847, 234 N.Y.S.2d 105 (1962); Black's Law Dictionary, Fourth Edition (1957); Webster's Third New International Dictionary (1961). We cannot say that one who repairs a trailer axle is enjoying or using a motor vehicle."

State Farm Mut. Auto. Ins. Co. v. Pan American Ins. Co., 437 S.W.2d 542 (Texas, 1969) considers the distinction between "maintenance" and "use" of a motor vehicle and provides that to extend coverage to strangers by the omnibus clause of a policy it is required that such stranger be *using* such automobile and not maintaining the same. This case points out that the replacement of fuel in an automobile is the maintenance of the same and is not the use of the same as far as the one placing fuel in the car is concerned. This is a well considered opinion and the Court believes that it correctly states the law that should be applied in this case.

■ Moreover, if it should be concluded that Tony was in fact *using* Defendant McGuire's pickup when he was placing gasoline therein, then coverage is still not afforded for the policies provide, as above shown, that they do not apply to the owned automobile of Defendant McGuire while the same is used by any person while such person is employed or otherwise engaged in the automobile business. The automobile business is defined to mean the servicing of automobiles. Under the evidence it is undisputed that the pickup was the "owned automobile" of Defendant McGuire and that Tony was servicing the same. Thus, if the pickup was being used by Tony at the time of the accident it would have been used by him while he was engaged in the automobile business.

The Oklahoma rule in this connection is clearly set forth in Karner v. Maynor, 415 P.2d 998 (Okl.1966). The owner's policy in that case provided that it did not apply to an automobile while it was being used in the automobile business. While the car was in the hands of a repairman he suffered an accident with the same. Coverage for the repairman was not found under the owner's policy for the reason that the automobile was being used by him in the automobile

---

3. These quotes are from the Continental Family Automobile Policy. The Preferred policy contained the same provisions.

business. The case cites 47 A.L.R.2d 558 with approval wherein it is stated:

> "In many cases omnibus clauses in motor vehicle liability insurance policies excluding coverage of persons or organizations or any agents or employees thereof, operating automobile repair shops, public garages, sales agencies, *service stations*, public parking places, or the like, have been held or recognized as applicable under the circumstances considered, thereby avoiding liability on the part of the insurance company for the accident." (Italics added.)

Also see Bounds v. Travelers Insurance Company, 242 Ark. 787, 416 S.W.2d 298 (1967); National Farmers U. P. & C. Co. v. General Guar. Ins. Co., 150 Mont. 297, 434 P.2d 708 (1967); Walker v. State Farm Mutual Automobile Ins. Co., 40 Ill.App.2d 463, 190 N.E.2d 121 (1963).

Thus, the Court first finds and concludes that Tony was not using the pickup within the meaning of the policies when he was placing gasoline therein and he did not become an additional insured under the omnibus clause, but if it be concluded that he was then using the pickup and was an additional insured, the Court finds and concludes that he was doing so while engaged in the automobile business and was excluded from coverage. In either event coverage for this accident is not afforded by the policies.

### OTHER MATTERS PRESENTED

Defendants have extensively briefed the propositions that insurance policies are strictly construed against the insurer, that policy exclusions are narrowly construed and that a total stranger to an automobile may be an insured under the omnibus clause of insurance pertaining to said automobile. The Court recognizes these principles of law and has decided this case in full consideration thereof. As stated by our Circuit in Fidelity and Casualty Company of New York v. Reece, 223 F.2d 114 (Tenth Cir. 1955) the extent or limit of insurance risks, if unambiguous, must be accepted in their plain, ordinary and popular sense and liabilities under a policy clearly not contemplated under a fair and reasonable interpretation of the contract, including its omnibus provision, may not be imposed upon the contracting insurer. The Court finds no ambiguity in the policies herein involved. The insurance terms that we are dealing with here have not only a plain, ordinary and popular meaning but they have been the subject of numerous cases in which the meaning and effect have been given to the same as done herein. It is indeed unfortunate, considering this tragic event, that Tony has no insurance coverage for his alleged acts of negligence. But his parents in buying a Homeowner's Policy for their residence and a Fire and Lightning Policy for the service station simply did not purchase insurance which would cover Tony nor is it possible to find him to be an additional insured under the McGuire Family Automobile Policies.

During the trial it was suggested for the first time that Thelma Thompson, who was the actual purchaser of the Continental Homeowner's Policy (and as well a Fire and Lightning Policy for the service station) did not receive the insurance that she had ordered from the agent. The Court insisted, out of an abundance of caution, that the buyer and seller of the Continental insurance be produced and examined on this point even though it had not been raised by the pleadings. This was done. Defendant Thelma Thompson and the insurance agent selling her the insurance policy were produced as witnesses and examined and cross-examined. From this evidence it became quite clear and the Court so finds that a full discussion of the insurance desired and obtained was had between these people; that Thelma Thompson is an intelligent person capable of understanding the general principles of insurance; that she knew what

insurance she was getting, understood the coverage and was not in anyway deceived or misled by the insurance agent. The Court finds no merit in the suggestion that the Thompsons did not get the insurance coverage they ordered.

■ It has also been suggested that the Homeowner's Policy premises' description is ambiguous and should be enlarged. However, the evidence clearly establishes and the Court so finds that the dwelling described is on the west side of the property and not on the east side and that it was the intent of the parties in this description to cover the dwelling on the west side of the tract and not the service station on the east side of the tract. It is significant in this connection that Defendant Thelma Thompson bought a separate Fire and Lightning Policy on the service station at the same time. To put the service station under the Homeowner's Policy would have resulted in double fire and lightning insurance on the same. The premises' description is not ambiguous but was a proper and reasonable method of describing the premises on which the residence was situated.

■ It has also been suggested or urged by the Defendants that this accident occurred on the "private approaches" to the insured premises under the Continental Homeowner's Policy and that coverage is thereby present under said policy. The evidence discloses that this accident occurred at the service station on its driveway next to a gasoline pump all of which was open to and was being utilized to serve the public. It is true that one may drive up to the side of the residence by using a part of the service station drive but the location of the accident here involved was not on a part of the drive necessary or designed to allow this. The location of the accident clearly did not occur on "private approaches" to the insured premises within the meaning of said provision of the Homeowner's Policy. To the contrary, the accident occurred on the *public driveway* of a service station open to the public.

Defendants' brief relies on many cases construing the loading and unloading provision of automobile policies. The Court fails to see the pertinence of these cases to this controversy. Likewise, Defendants rely on many cases cited in their brief construing "ownership, maintenance or use" of the "owned automobile" provisions of automobile policies. Again, the Court fails to see the pertinence of these cases, particularly with reference to the maintenance of the owned automobile for in this controversy we are first dealing with the omnibus clause of the policies and for a stranger to the policy to become an additional insured thereunder he must be, "any other person *using* such automobile, . . . ." We are thus concerned initially with the word *using* and not with the word *maintenance* of the automobile involved in order to determine if Tony was an additional insured under the omnibus clause of the Family Automobile Policies. If it is found that he was such an additional insured then we may look to other pertinent provisions of the policies but first it must be determined that he was an additional insured under the omnibus clause of the Family Automobile Policies. This we have been unable to find under the provisions of the policies and the facts of this case.

Judgment must be entered herein in favor of the Plaintiff and Intervening Plaintiff.