**UNITED STATES of America,
Appellee,**

v.

**Charles SWINTON, Appellant.**

No. 74–1806.

United States Court of Appeals,
Tenth Circuit.

Argued July 10, 1975.

Decided Sept. 2, 1975.

Rehearing Denied Sept. 23, 1975.

Monti Belot, Asst. U. S. Atty., Kansas City, Kan. (Robert J. Roth, U. S. Atty., and Richard D. Simpson, Asst. U. S. Atty., Kansas City, Kan., on the brief), for appellee.

David J. Phillips, Asst. Federal Public Defender, Kansas City, Kan. (Leonard D. Munker, Federal Public Defender, Kansas City, Kan., on the brief), for appellant.

Before CLARK *, Retired Associate Justice, and HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Charles Swinton (Swinton) appeals his jury conviction of engaging in the business of dealing in firearms in violation of 18 U.S.C.A. § 922(a)(1)(Supp.1975).[1] A detailed recitation of the facts is required.

Agents Knopp and Cannia of the Bureau of Alcohol, Tobacco, and Firearms of the United States Treasury Department, first met with Swinton on the afternoon of December 17, 1973. They inquired if he had any guns for sale. Swinton related that he did not have any guns on hand for sale at that time, but that he had contacts in the city. He also stated that he knew someone who had "knocked off a GEM store and was sitting on some guns." Swinton gave the agents his phone number and told them to call him the next day.

Pursuant to Swinton's request, Agent Knopp phoned him the following day. Swinton stated that he could get some rifles quickly. However, because the agents were not interested in rifles, they agreed to meet with Swinton later that day. The agents met with Swinton that

---

* Supreme Court of the United States, Sitting by designation.

1. Under § 922(a)(1) it is unlawful for any person, other than a licensed dealer, to engage in the business of dealing in firearms.

evening. Swinton remarked that he had recently purchased some stolen guns, but that he had already sold them. He then directed the agents to several taverns in Kansas City, Kansas. After stopping in front of one of the taverns, Swinton entered, and returned shortly to the agents' vehicle, informing them that he had a .38 caliber revolver for sale for $55. Agent Knopp gave Swinton $55, whereupon Swinton re-entered the tavern and returned with the revolver which he handed to Knopp.

The agents next met with Swinton on January 2, 1974. At that time he directed them to a service station where he thought he could get some guns from Farley, the station manager. When he was unable to purchase any guns at the station, Swinton directed the agents to take him to several other locations in Kansas City where he had dealt for guns in the past. No guns were purchased. Swinton commented to the agents that pistols were scarce and hard to get because "they weren't stealing as many of them at this time."

The agents thereafter took Swinton back to the service station managed by Farley. At that time Agent Cannia bought a .38 caliber pistol from Farley. Farley had previously purchased it from Swinton. Upon leaving the station, Swinton asked Farley to "let him know" if he got any more pistols. Thereafter the agents bought Swinton a bottle of whiskey for arranging "the deal and transfer" (Purchase of the pistol).

The agents next met with Swinton in the late afternoon of January 4, 1975. Swinton was awaiting a phone call from one of his Kansas City contacts regarding the purchase of some guns. He then related to the agents that he was dealing in guns.

On January 15, 1974, Agent Knopp called Swinton. Swinton asked Knopp if he was interested in buying some rifles or a sawed-off shotgun. Knopp stated that he would pay up to fifty dollars for a good shotgun.

Agent Knopp phoned Swinton again on January 17, 1974. Swinton stated that he had been unable to make contact with the man relative to the sawed-off shotgun. Swinton also stated: "Dudes normally get ahold of me and tell me what type of gun they want and then I go out and get it."

The agents' final contact with Swinton occurred on February 13, 1974, at which time Agent Knopp, through Swinton, purchased a sawed-off shotgun from one Smith. During the purchase Swinton commented to "everyone in general": "You know you can get a lot of time for this." Following this sale, Swinton remarked to the agents: "We are going to really start dealing now."

The agents testified that during their entire encounter with Swinton that he did not call them; that they bought him beer and whiskey several times; and that Swinton appeared to drink a lot on occasion.

Swinton presented no evidence. On appeal he contends: (1) the Trial Court erred in refusing to give a procuring agent instruction which was requested as the theory of defense; (2) the Trial Court erred in erroneously and incompletely instructing the jury as to the elements which comprise the offense of engaging in the business of dealing in firearms without a license; and (3) the evidence was insufficient at trial to show that Swinton was engaged in the business of dealing in firearms or that dealing in firearms, if proved, constituted selling said firearms. Because of the dispositive nature of (3), we will treat Swinton's contentions in reverse order.

## I.

Swinton contends that the evidence was insufficient at trial to show that he was engaged in the business of dealing in firearms or that dealing in firearms constituted selling firearms. We hold that the evidence adequately established that Swinton was actively engaged in the business of dealing in firearms. We further hold that a § 922(a)(1) violation does not require that the prosecution establish *dealing* as the equivalent of *selling*.

In advancing his contention that the evidence does not establish that he was not engaged in the business of dealing in firearms, Swinton cites ·Cherot v. United States Fidelity and Guaranty Company, 264 F.2d 767 (10th Cir. 1959), as supportive authority of his proposition that "business" under Section 922(a)(1) necessarily means "an undertaking engaged in with some regularity and for profit and income." He concludes that since the evidence does not show that he received any profit or income as a result of the transactions involved, that a Section 922(a)(1) violation has not been established.

This Court has not heretofore considered the scope of the language "engaged in the business of dealing in firearms." We are not inclined, however, to "lift" the "business" definition from an insurance exclusionary clause as in Cherot, supra, and apply it here. We are not without guidance in interpreting the language of Section 922(a)(1), in accord with our decision here.

There is, of course, support for Swinton's primary contention. In United States v. Day, 476 F.2d 562 (6th Cir. 1973), the Court held that one is "engaged in the business of dealing" in firearms if such activity occupies the person's time, attention, and labor for the purpose of livelihood or profit. And in United States v. Gross, 451 F.2d 1355 (7th Cir. 1971), the Court stated that Section 922(a)(1) was not unconstitutionally vague, and held that "dealer" meant anyone engaged in the business of selling firearms; and that the word "business" referred to that which occupies time, attention, and labor for the purpose of livelihood or profit.

There are contrary decisions. In United States v. Wilkening, 485 F.2d 234 (8th Cir. 1973), the Court, per curiam, held that the offense of dealing in firearms did not require that the defendant's primary business be dealing in firearms or that he make a certain profit from it. A similar analysis of Section 922(a)(1) was rendered in United States v. Jackson, 352 F.Supp. 672 (S.D.Ohio 1972). There the Court held that one is engaged in the "business of dealing in firearms" if he has guns on hand or is ready and able to procure them for the purpose of selling them to those persons he accepts as customers.

 We hold that Section 922(a)(1) does not require that the Government establish that a person engaged in the business of dealing in firearms make a profit, even though the "dealing" activity requires time, attention and effort. In doing so, we decline to follow the holdings of Day, supra, and Gross, supra. We adopt the holding of Wilkening, supra, i. e., that a Section 922(a)(1) conviction for dealing does not necessitate proof that a defendant's primary business is dealing in firearms or that the dealing in firearms is on a profit-making basis. We believe that this holding is consistent with the intent of the Act:

> When Congress enacted the provisions under which petitioner was convicted, it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest. * * * Congress determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States. * * * The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." S.Rep.No. 1501, 90th Cong., 2d Sess., 22 (1968). (Emphasis supplied).

Huddleston v. United States, 415 U.S. 814 at page 824, 94 S.Ct. 1262, at page 1268, 39 L.Ed.2d 782 (1974).

In view of the broad corrective and remedial provisions of the Act, we deem it inappropriate to vitiate the efficacy of its provisions by restricting "dealers" ex-

clusively to those who deal in guns on a profit-making basis. We accordingly are not persuaded by the contention that the Government must establish a profit as part of its case-in-chief.

■ We believe that our determination that the broad, corrective purposes of the Act are to be considered paramount is bolstered by other interpretive decisions which establish that: wilfulness is not an element of prosecution under the Act, *United States v. Petrucci*, 486 F.2d 329 (9th Cir. 1973), cert. denied, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974); specific intent need not be shown, *United States v. Jackson, supra;* and that scienter need not be established, *United States v. Ruisi,* 460 F.2d 153 (2nd Cir. 1972), cert. denied, 409 U.S. 914, 93 S.Ct. 234, 34 L.Ed.2d 176 (1972). These holdings, when considered within the broad intent of the Act, highlight the established principle that there is no absolute constitutional right of an individual to possess a firearm. *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939); *United States v. Romero,* 484 F.2d 1324 (10th Cir. 1973).

■ On the basis of the standards which we have adopted as applied to the facts of this case, we hold that the Government established that Swinton was engaged in the business of dealing in firearms. Swinton's sale to Agent Knopp, standing alone, without more, would not have been sufficient to establish a violation of Section 922(a)(1). That sale, however, when considered in conjunction with other facts and circumstances related herein, established that Swinton was engaged in the business of dealing in firearms. See *Bush v. United States,* 218 F.2d 223 (10th Cir. 1954). The unrebutted evidence of the Government established not only that Swinton considered himself to be and held himself out as a dealer, but that, most importantly, he was actively engaged in the business of dealing in guns.

II.

■ Swinton contends that the Court erred in erroneously and incompletely instructing the jury as to the elements which comprise the offense of engaging in the business of dealing in firearms without a license. Swinton argues that since the Court did not define "business" and "selling" in its instructions to the jury, that reversible error occurred.

The Court instructed the jury that:

You are instructed that in Count III of the Information, the defendant CHARLES SWINTON is charged with violation of 18 U.S.C. § 922(a)(1), which provides in pertinent part that:

"(a) It shall be unlawful—

(1) for any person, except a . . . licensed dealer, to engage in the business of . . . dealing in firearms, . . ."

The term "dealer" is defined as meaning any person engaged in the business of selling firearms wholesale or retail.

The term "licensed dealer" means any dealer who is licensed under the provisions of Chapter 44, Title 18, United States Code.

The term "business" as used in the statute is a word of common usage and needs no formal definition. The statute does not prescribe any standards for determining when a person is engaged in the "business of dealing in firearms." In determining whether the defendant Swinton was engaged in the business of dealing in firearms, you may consider any evidence that has been introduced showing that firearms were obtained and transferred by said defendant to government agents during the times alleged in Count III of the Information.

In view of our discussion in I, *supra,* relative to the meaning of "engaged in the business of dealing in firearms", along with the evidence presented by the Government, we hold that the Court did not err in refusing to define "business" and "selling". We accordingly hold that

the instructions given correctly state the law. See *United States v. Hedges,* 458 F.2d 188 (10th Cir. 1972).

### III.

Swinton contends that the Court erred in refusing to give a "procuring agent" instruction which he requested as a theory of his defense. This contention, advanced without cogent authority, is without merit.

■ A defendant is not entitled to sit idly by and have the court develop his case via certain requested instructions. Swinton did not testify nor did he present any evidence supportive of his contention that he was acting only as a procuring agent. While a defendant is entitled to instructions on any theory of defense finding support *in the evidence presented* and the law [*United States v. Swallow,* 511 F.2d 514 (10th Cir. 1975); *Sparrow v. United States,* 402 F.2d 826 (10th Cir. 1968)], a trial court is not required to instruct on a defendant's theory of the case when such an instruction has no foundation in evidence. *United States v. Hagen,* 470 F.2d 110 (10th Cir. 1972), cert. denied, 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970 (1973).

### IV.

An appellate court must, following a conviction, view the evidence in the light most favorable to the Government in determining if there is substantial evidence, direct or circumstantial, together with all reasonable inferences to be drawn therefrom, from which a jury might find the appellant guilty beyond a reasonable doubt. *United States v. Crocker,* 510 F.2d 1129 (10th Cir. 1975); *United States v. Downen,* 496 F.2d 314 (10th Cir. 1974), cert. denied, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 141 (1974); *United States v. Yates,* 470 F.2d 968 (10th Cir. 1972). By this standard we hold that there is substantial evidence in the record from which the jury could find Swinton guilty of engaging in the business of dealing in firearms.

Affirmed.