UNITED STATES of America, Plaintiff,

v.

ONE ASSORTMENT OF 89
FIREARMS, Defendant.

Civ. A. No. 77–590.

United States District Court,
D. South Carolina,
Columbia Division.

Dec. 30, 1980.

Mary G. Slocum, Eric Wm. Ruschky, Glen E. Craig, Asst. U. S. Attys., Columbia, S. C., James C. Bright, Regional Counsel ATF, for plaintiff.

SIMONS, Chief Judge.

This forfeiture action, brought pursuant to 18 U.S.C. § 924(d), comes before the court with a long and somewhat complex history.

The assortment of firearms in question was seized by the Bureau of Alcohol, Tobacco and Firearms on January 20, 1977, from the residence of Patrick M. Mulcahey in Columbia, S. C. Subsequently, Patrick Mulcahey was tried for alleged criminal violations pertaining to such firearms.[1] A jury

1. Mulcahey's Indictment alleged violations of 18 U.S.C. §§ 922(a)(1) and 924(a). It charged that, from on or about May 12, 1976 up to the return of the Indictment on January 19, 1977, Mulcahey was engaged in the business of dealing in firearms without being licensed to do so.

found Mulcahey not guilty of the charges against him on March 16, 1977.

On March 31, 1977, the plaintiff filed this civil action *in rem* seeking forfeiture to the United States of an assortment of firearms, as identified in an exhibit to the Complaint. The basis for such forfeiture, as alleged in the Complaint, was that: "said firearms were had and possessed and used and intended to be used on January 20, 1977, and prior thereto by Patrick M. Mulcahey in Richland County, South Carolina, in violation of the laws of the United States by engaging in the business of a dealer in firearms and ammunition without the said Patrick M. Mulcahey having first applied for and received a license as a dealer in firearms...." A warrant for arrest and notice was issued April 4, 1977. Patrick M. Mulcahey filed a Claim and Answer on April 14, 1977.

Upon Motion of the plaintiff, the court ordered amendment of the Complaint on July 6, 1977, and on the same date issued a Warrant for Arrest and Notice thereon. On July 18, 1977, the claimant filed his Claim and Answer to the Amended Complaint. Subsequent to that time, the parties entered into discovery proceedings and as a result thereof have stipulated that the transcript of the aforementioned criminal proceeding, *United States v. Mulcahey*, Criminal No. 77–0013 (D.S.C.1977), would be submitted to the court in lieu of testimony.

By Order dated November 14, 1978, Judge Robert W. Hemphill, to whom this case was assigned initially, granted the plaintiff's Motion to Strike the second and third defenses of the defendant's Answer, and denied the claimant's Motion for Summary Judgment. Pursuant to the parties' stipulations, the case was submitted for decision on the basis of the aforementioned transcript and briefs, all of which have been filed with the court.

From this background, and on the basis of the evidentiary sources presented by the government and the claimant, the court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The commencement of this action was authorized, sanctioned and directed in accordance with 26 U.S.C. § 7401, as demonstrated by a letter with attachments from James C. Bright, Regional Counsel, Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury, said letter being incorporated into plaintiff's Brief as Appendix II.

2. The claimant, Patrick M. Mulcahey, did not have a Federal firearms dealer's license during the period July 1, 1975 to March 31, 1977, as shown by the certification of the lack of such record in official files by the Supervisor, Firearms Explosives Licensing Section, Regulatory Enforcement, Bureau of Alcohol, Tobacco and Firearms, United States Department of the Treasury for the Southeast Region, Atlanta, Georgia. This certification and attendant documents are incorporated in plaintiff's Brief as Appendix III.

3. On May 13, 1976, the claimant at his residence, 1407 Woodlawn Avenue, Columbia, South Carolina, sold a Ruger .357 Magnum Pistol, Serial Number 150–43012 to undercover Special Agent George D. Ferguson, Jr., and informant Kenneth E. Williford for $130. On this occasion, according to Special Agent Ferguson's report, the claimant possessed and offered for sale three other firearms, to wit: A Colt .38 Special Automatic for $160; a Carbine for $160; a .38 Caliber Rifle. The claimant stated, according to Ferguson's report, that he had 5,000 rounds of .223 caliber ammunition and would take $450 for it. Also, it was stated in the report that Williford was present with a firearm described as an "Enforcer" and Mulcahey offered him $60 plus the carbine for it.

4. On May 19, 1976, at his residence, the claimant sold a Taurus .38 Caliber Pistol, Serial Number 858162 to undercover Special Agent Ferguson and informant Williford for $90. On this occasion, according to the

agent's report, the claimant possessed and offered for sale four other firearms, to wit: A .38 caliber rifle for $100; a 9 mm automatic nine-shot for $175; a Smith & Wesson .357 Magnum, Model 19 for $215; and a .45 automatic for $175. When asked if he had any more guns for sale, the claimant replied, according to the agent's report, that he did not know exactly what he had on hand and did not know how many he wanted to sell. According to the report, when the claimant again asked about the "Enforcer," informant Kenneth E. Williford stated that it needed repairs. Claimant replied that he would like to take it and fix it.

5. On May 26, 1976, at his residence, the claimant sold a Smith & Wesson 9 mm automatic, Model 39–2, Serial Number A275312 to informant Kenneth E. Williford for $180 in the presence of Special Agent George D. Ferguson, Jr. Prior to making this sale the claimant required Williford to execute a Form 4473 which was later seized at claimant's residence on January 20, 1977. According to the agent's report, at the time of the sale of this firearm, the claimant possessed and offered for sale the following firearms: an Army .45 automatic, a .22 rifle, a carbine, a .357 Smith & Wesson, and a Colt .45 caliber with pearl handles. The claimant said that he would sell Williford more guns. The claimant again said that he would like to have the "Enforcer" and Williford told him that he thought he had it sold.

6. In mid 1976, the claimant purchased a Smith & Wesson .357 revolver, Serial Number 8K15410, from non-licensee, Karl O. Grant, for $150. This weapon was seized on January 20, 1977, from the claimant and is on the list of firearms attached to the forfeiture Complaint.

7. In the latter part of 1976, the claimant purchased a Smith & Wesson, Model 60, Revolver, .38 caliber, Serial Number R132162 from non-licensee, Randall B. Richardson, for $170. This firearm was seized on January 20, 1977, from the claimant and is on the list of firearms attached to the forfeiture Complaint.

8. On August 21, 1976, the claimant purchased from Thomas O. Lain, d/b/a Lain's Gun Shop, a licensed firearms dealer, two Ruger caliber .223 rifles.

9. On October 5, 1976, the claimant purchased from Thomas O. Lain, d/b/a Lain's Gun Shop, a licensed firearms dealer, three Ruger Mini, Model 14, .223 Caliber Rifles, Serial Numbers 180–53444, 180–50813, and 180–51289. Two of these weapons, 180–53444 and 180–50813, were seized on January 20, 1977, from the claimant and are on the list of firearms attached to the forfeiture Complaint.

10. On December 31, 1976, the claimant purchased from Thomas O. Lain, d/b/a Lain's Gun Shop, a licensed firearms dealer, two firearms, to wit: One Ruger Mini, 14 Model, .223 Caliber Rifle, Serial Number 180–49696, and one Smith & Wesson, 9 mm, Model 59, Pistol, Serial Number A345245. These two firearms were seized on January 20, 1977, from the claimant and are on the list of firearms attached to the forfeiture Complaint.

11. On January 13, 1977, the claimant at his residence offered for sale to informer Kenneth Williford and undercover Special Agent R. Jerry Embree two Springfield rifles for $150 each, two S & W Automatic Pistols, and one .357 Revolver. On this occasion, the claimant said that everything he had was for sale except one pump shotgun that he was putting a front sight on.[2]

12. On January 20, 1977, Special Agent Robert Holland, assisted by other agents, executed a Federal search warrant on claimant's residence, 1407 Woodlawn Avenue, Columbia, South Carolina, and seized 105 firearms.

---

**2.** Agent Embree's contemporaneous interpretation of claimant's comment to mean "everything [they] saw on that occasion [was for sale,]" does not control the court's interpretation of claimant's words. Obviously enough, at the time claimant made the statement, Agent Embree could not have known of the full extent of the firearms inventory claimant possessed. Nor, in interpreting the remark as it was spoken, did Agent Embree have the advantage of the full course of claimant's activity spread before him, as this court does now.

13. Thirteen of the 105 firearms seized were determined to have been stolen and were returned to their owners. The 92 remaining firearms were described on the list attached to the original Complaint. One Luger Model 1918, 9 mm automatic pistol, serial number 8914 was added by amendment to the original Complaint. From this total of 93 firearms, four were returned to the claimant's wife pursuant to Judge Robert Hemphill's Order of July 6, 1977. This leaves 89 firearms as the subject of this Order.

14. Of the 89 firearms remaining as the subject of this action, nine are the property of members of the Mulcahey family other than the claimant. As identified at Mulcahey's criminal trial, these firearms and their owners are as follows: Government's exhibits 77 and 78—property of claimant's wife; Government's exhibits 24 and 59—property of claimant's daughters; Government's exhibits 14, 91 and 97—property of claimant's older son; Government's exhibits 39 and 109—property of claimant's younger son.[3] While the firearms owned by members of the Mulcahey family other than the claimant were present in the Mulcahey residence at the time of seizure, there is no evidence that these particular firearms were stored together with the firearms owned by the claimant, that they were offered for sale by the claimant, or that they were otherwise used in any manner in the forfeitable offense.

## CONCLUSIONS OF LAW

1. The Government has proved by the preponderance of the evidence that the claimant, Patrick M. Mulcahey, was engaging in the business of dealing in firearms and ammunition without being licensed to do so as required by federal law. It is well established that a forfeiture proceeding under 18 U.S.C. § 924(d) is remedial in nature and is properly characterized as a civil proceeding. *Bramble v. Richardson*,

498 F.2d 968 (10th Cir. 1974); *United States v. One (1) 1969 Buick Riviera Automobile*, 493 F.2d 553, 554 (5th Cir. 1974); *Epps v. Bureau of Alcohol, Tobacco & Firearms*, 375 F.Supp. 345, 346 (E.D.Tenn.1973). Unlike the burden of proof "beyond a reasonable doubt" applicable in criminal cases, the burden of proof applicable in civil proceedings is the preponderance of the evidence standard. *Glup v. United States*, 523 F.2d 557 (8th Cir. 1975); *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); *One 1961 Lincoln Continental Sedan v. United States*, 360 F.2d 467 (8th Cir. 1966).

2. Appendix III of plaintiff's Brief, a Certificate of Lack of Official Record of Issuance of Firearms Dealer's License to Patrick M. Mulcahey, 1407 Woodlawn Avenue, Columbia, South Carolina, for the period July 1, 1975, to March 31, 1977, shows that the claimant had not been issued a license to deal in firearms for the period of July 1, 1975, to March 31, 1977. The claimant *was* at one time licensed to deal in firearms. By his own admission at the criminal proceeding against him, Mulcahey held a federal firearms license from 1966 until sometime in 1975. However, the claimant bought and sold firearms on numerous occasions during the period from July 1975 through March 1977, when no license to deal had been issued to him. Evidence of these transactions clearly establishes that during an eight-month period from May 13, 1976, to January 20, 1977, the claimant did engage in the business of dealing in firearms without being licensed to do so. That this was the case is evidenced by the following summary of these transactions:

(a) seven purchases of firearms on four separate occasions;

(b) three offers to purchase a firearm (the same "Enforcer") on three separate occasions;

---

3. The court regards as insignificant the slight variance between claimant's testimony at trial and his answers to interrogatories concerning the ownership of certain firearms by his wife and children. Such small variance is explicable in light of the large number of firearms involved in the overall matter. The court considers the claimant's trial testimony to be the more reliable.

(c) three sales of firearms on three separate occasions;

(d) seventeen offers to sell firearms (at least nine different firearms) on four occasions.

In his answers to the plaintiff's interrogatories, the claimant exhibited a marked inability to recall the date he acquired the seized firearms, from whom and how these firearms were acquired, and the purchase price or other thing of value given by the claimant in exchange for each firearm. Of the 91 firearms listed on the claimant's Answers to plaintiff's interrogatories, the claimant was unable to give any information regarding 53 of the firearms.

The claimant, in his answers to the plaintiff's interrogatories, recalled at least four occasions when he had purchased guns during the period in question; and he recalled the three sales of firearms and one sale of ammunition which occurred in May of 1976.

3. The type of firearms involved in these transactions, as well as most of the firearms seized, were not curios or relics, but of the sort commonly dealt in by licensed dealers. The claimant submitted that many of the guns were in fact curios or relics; but at trial, firearms expert Robert J. Scroggie testified that, at most, fourteen firearms were curios or relics, and only five were positively curios or relics. None of the firearms in question were identified as "antique firearms" within the meaning of 18 U.S.C. § 921(a)(16), so as to remove them from the definition of "firearm" under § 921(a)(3), and thereby from the prohibition of § 922(a)(1).

4. Of the claimant's purchases, three or four were of two or more of the same type firearm. The court considers this to be strong evidence of dealing in firearms, rather than collecting. In particular, of six Ruger Mini 14, .223 caliber rifles purchased by the claimant from August 21, 1976, to December 3, 1976, only three remained among those firearms seized pursuant to the warrant on January 20, 1977.

5. Resale of guns shortly after their purchase is yet another strong indicator of dealing in firearms. At trial, Special Agent Robert Holland testified that he had taken an inventory of the claimant's stock in 1974, during the period when the claimant was a federally licensed firearms dealer. Nineteen of the firearms in the inventory at trial were present to Holland's inventory of Mr. Mulcahey's stock of 51 firearms in July, 1974.

6. Though proof that an unlicensed person is engaging in the business of dealing in firearms must, of course, be based on the evidence presented in each case, courts have upheld criminal convictions for unlicensed dealing in firearms under factual situations less aggravated than that of the instant case.

The sale of an unspecified number of firearms to a stranger, plus offers to sell firearms to agents, was held to be sufficient evidence to convict in *United States v. Apuzzo*, 555 F.2d 306 (2nd Cir. 1977), *cert. denied*, 435 U.S. 916, 98 S.Ct. 1470, 55 L.Ed.2d 507 (1978).

The sale of seven handguns to undercover agents in four separate transactions in early 1970, and seizure of 96 new handguns at the defendant's home was sufficient in *United States v. Day*, 476 F.2d 562 (6th Cir. 1973). In the instant case, during the month of May, 1976, three firearms were sold to undercover agents in three separate transactions; twelve firearms were offered for sale to the agents; three offers for purchase of the "Enforcer" were made to the informer, Mr. Williford; and on May 19, 1976, the claimant even offered to repair the Enforcer for Mr. Williford. Furthermore, 105 firearms were seized from the claimant's residence at the time the search warrant was executed.

7. That several sales of firearms occur in a reasonably short space of time is evidence of dealing in firearms. *See United States v. Gross*, 451 F.2d 1355 (7th Cir. 1971), which involved the sale of eleven separate weapons in a two-month period; and *United States v. Williams*, 502 F.2d 581 (8th Cir. 1974), in which there were five sales of firearms to Government agents in a month's time.

8. A violation of 18 U.S.C. § 922(a)(1) does not require that the Government establish dealing as the equivalent of selling; nor does it require that the Government establish that the person engaged in the business of dealing in firearms make a profit. *United States v. Vitale*, 596 F.2d 688 (5th Cir. 1979); *see also United States v. Shirling*, 572 F.2d 532 (5th Cir. 1978). One sale to an agent along with the fact that the defendant considered himself to be and held himself out as a dealer was sufficient in *United States v. Swinton*, 521 F.2d 1255 (10th Cir. 1975), *cert. denied*, 424 U.S. 918, 98 S.Ct. 1121, 47 L.Ed.2d 324 (1976).

In *United States v. Huffman*, 518 F.2d 80 (4th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975), the Fourth Circuit upheld a conviction based upon dealings involving more than a dozen transactions in the course of a few months, including trading large quantities of ammunition for firearms.

9. Crucial to a determination that one is dealing in firearms, is the representation or holding out by the defendant, or in the instant civil contest, by the claimant, that he buys and/or sells firearms and ammunition. In *United States v. Micieli*, 594 F.2d 102 (5th Cir. 1979), evidence of the defendant's acquisition of firearms along with the defendant's statement that he sold 10 firearms, was sufficient to establish "dealing in firearms." The only evidence of sale in *Micieli* was the defendant's statement.

In the instant case, the claimant had Mr. Williford execute a firearms Form 4473. This is a firearms disposition record which is presented by the seller to the buyer for him to fill out. It is a standard form which is used by licensed firearms dealers; it serves as protection for the licensed dealer in the event the buyer is a convicted felon or is otherwise restricted in his ability to purchase firearms. The claimant even asked Mr. Williford for his driver's license number as identification on the form. Furthermore, on January 13, 1977, the claimant in the instant case represented to Mr. Willi-

ford and Special Agent R. Jerry Embree that "everything he had was for sale," except for one firearm on which he was working. This statement by the claimant is evidence that at that time he was engaging in the business of a dealer in firearms and had committed for the purpose of, and intended to use in, the said business, all the firearms he possessed, except one. This statement by the claimant also reflects the "willingness to deal" and "greater degree of activity than occasional sales by a hobbyist," suggested in *United States v. Huffman*, 518 F.2d 80 (4th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975).

10. In *United States v. One Assortment of 12 Rifles and 21 Handguns*, 313 F.Supp. 641 (N.D.Fla.1970), and *United States v. One Assortment of Firearms and Ammunition*, 313 F.Supp. 1056 (E.D.Tenn.1970), the claimants were engaged in the business of dealing in firearms and ammunition without being licensed to do so, in violation of 18 U.S.C. § 922(a)(1). The facts established that the claimants had been selling firearms, and firearms were displayed for sale. On these facts, the courts ordered forfeiture of the firearms and ammunition.

In the instant case, although the claimant did not display his entire assortment of firearms, he did maintain them all in his residence, from which he also operated an army surplus business. The fact that the claimant kept the entire assortment of firearms so accessible to his surplus showroom, that he repeatedly went into the non-public area of his residence to obtain the firearms he did display to government agents, the claimant's own statements, his course of dealing, and the wealth of circumstantial evidence in the record prove by a preponderance of the evidence that he used or intended to use all of the firearms he personally possessed as an inventory to be drawn from in the course of dealing in firearms, in violation of 18 U.S.C. § 922(a)(1).

11. Consequently, this court concludes that the Government has proved by a preponderance of the evidence that, with the exception of those firearms labeled in

claimant's criminal trial as Government's Exhibits 14, 24, 39, 59, 77, 78, 91, 97 and 109, the firearms here in question were involved in, used or intended to be used in violation of 18 U.S.C. § 922(a)(1). Such firearms are rendered subject to forfeiture under 18 U.S.C. § 924(d), which forfeiture is hereby ordered.

Those firearms identified as Government's Exhibits 14, 24, 39, 59, 77, 78, 91, 97 and 109 shall be returned to their owners as described in the fourteenth finding of fact set out above. These Exhibits are described by type and/or serial number as follows:

(1) Exhibit 14: Iver Johnson, 12 gauge single barrel shotgun, Champion Model, Serial Number—None. (The court notes that claimant described Exhibit 14 as a 16 gauge shotgun, when it apparently is in fact a 12 gauge. *Cf.* Exhibit 44, which is a 16 gauge Iver Johnson shotgun.)

(2) Exhibits 24 and 59: two Remington 22 caliber Mohawk rifles, Serial Nos. 2324414 and 2324420.

(3) Exhibit 39: Winchester 22 caliber Model 290 Rifle with scope, Serial No. 695087.

(4) Exhibit 77: Kurz 9mm backup Model Automatic Pistol, Serial No. A03183.

(5) Exhibit 78: Browning Sport King Model 22 long rifle automatic pistol, Serial No. 10466P69.

(6) Exhibit 91: Ruger carbine 44 magnum automatic rifle with scope, Serial No. 100–20563.

(7) Exhibit 97: Remington Fieldmaster 22 caliber pump rifle, Serial No. 153708.

(8) Exhibit 109: Harrington & Richardson 410 gauge shotgun, Model 158, Serial No. AF 3398.

AND IT IS SO ORDERED.